54 F.3d 785
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Antonio MORALES-AREVALO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70332.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 16, 1995.*
Decided May 22, 1995
 
 Before: WALLACE, Chief Judge, HUG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Antonio Morales-Arevalo, a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an Immigration Judge's ("IJ") decision finding Morales-Arevalo deportable and pretermitting his application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Secs. 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we deny the petition.
 
 
 3
 On petition for review, Morales-Arevalo contends that the BIA erred by denying him the opportunity to apply for asylum and withholding of deportation. This contention lacks merit.
 
 
 4
 * Background
 
 
 5
 At his initial deportation hearing on November 2, 1993, Morales-Arevalo appeared without counsel. The IJ advised him of his right to be represented by counsel at no expense to the government and gave him a list of free legal services in the area, as required by 8 C.F.R. Sec. 242.16(a). Morales-Arevalo indicated that he had counsel but needed an extension of time. The IJ granted him a continuance, but warned Morales-Arevalo that if he appeared at the continued hearing without counsel he would have to represent himself.
 
 
 6
 At the continued hearing on January 14, 1994, Morales-Arevalo again appeared without counsel. The IJ, through an interpreter, inquired whether Morales-Arevalo had obtained counsel and Morales-Arevalo indicated that he had not. The IJ then inquired if Morales-Arevalo was prepared to represent himself. Morales-Arevalo indicated that he was.
 
 
 7
 At the hearing, Morales-Arevalo conceded deportability and designated Guatemala as the country of deportation. The IJ then inquired into why Morales-Arevalo had come to the United States. Morales-Arevalo indicated that "at the time when I came here, they were killing a lot of people and relatives of mine were also killed." The IJ then asked Morales-Arevalo if he was afraid to return to Guatemala. Morales-Arevalo indicated that he was. When asked why, Morales-Arevalo and the IJ had the following colloquy:
 
 
 8
 Q. Why are you afraid of going home? Why do you think you will be hurt?
 
 
 9
 A. I don't have a fear, but I am afraid of the kind of life that you have to live over there.
 
 
 10
 Q. You just said you don't have fear, but you are afraid. I don't know what that means. What concerns you about life in Guatemala? Can you just tell me?
 
 
 11
 A. The poverty that the peasants have.
 
 
 12
 Q. Is your only concern an economic concern about living below the economic level in Guatemala that you would have here in the United States? Is that your only concern?
 
 
 13
 A. Yes, and the future of my son that is here.
 
 
 14
 Q. Again, just to make sure, sir. Are your only concerns of an economic nature? Is that what you are saying?
 
 
 15
 A. Yes.
 
 
 16
 Based on this testimony, the IJ pretermitted Morales-Arevalo's application for asylum and withholding of deportation. Moreover, the IJ found Morales-Arevalo ineligible for voluntary departure based on his 1993 conviction for grand auto theft.
 
 
 17
 Morales-Arevalo filed an appeal with the BIA challenging, among other things, the IJ's pretermission of his asylum application. The BIA dismissed his appeal, and Morales-Arevalo timely petitions for review.
 
 II
 Merits
 
 18
 The Attorney General has discretion to grant asylum if the alien is a "refugee." See 8 U.S.C. Sec. 1158(a). An alien qualifies as refugee if he is unable or unwilling to return to his country of origin "because of persecution of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A). "If the alien expresses fear of persecution or harm upon return to any of the countries to which he might be deported ... the [IJ] shall: (i) advise the alien that he may apply for asylum ... and (ii) make available the appropriate application forms." 8 C.F.R. Sec. 242.17(c)(2).
 
 
 19
 To be eligible for asylum the alien must establish both a genuine subjective fear of persecution and an objectively reasonable fear of persecution. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir. 1993). The burden is on the alien to meet this standard. See 8 C.F.R. Sec. 208.13. In addition, a claim for asylum based on economic hardship "depends on something more than generalized economic disadvantage at the destination." Raas v. INS, 695 F.2d 596, 596 (9th Cir. 1982).
 
 
 20
 Here, Morales-Arevalo's testimony indicated that he was ineligible for asylum. See id. Given these circumstances, the BIA did not err by finding that the IJ had properly pretermitted Morales-Arevalo's asylum and withholding of deportation claim.[1]
 
 
 21
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Because the standard for withholding of deportation is higher than the standard for a grant of asylum, and Morales-Arevalo has failed to meet the lower standard for a grant of asylum, we also affirm the IJ's pretermission of Morales-Arevalo's application for withholding of deportation. Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir. 1993)